## Walker Estate

*Henderson, Wetherill & O'Hey,* and *Montgomery, McCracken, Walker and Rhoads,* for accountants.

*Aaron S. Swartz, 3rd,* guardian and trustee ad litem, p.p.

TAXIS, P. J., May 20, 1965.—The principal problem raised at this audit goes to the effect of certain language used by donor in paragraphs tenth and thirteenth of the deed of trust, concerning the apportionment of certain dividends between principal and income. The practical significance of this problem may be understood by reference to the account, which shows that the 34,799 shares of the Life Insurance Company of Virginia, presently constituting the principal of this trust, had a value on February 1, 1941, the date of creation of the trust, of $264,178.57, but on August 31, 1964, was worth $2,309,783.63. The present holding has derived, via stock dividends and splits, from some 3,300 shares of the same company, originally placed in the trust by settlor.

It is unnecessary to set forth the many income interests created by the deed of trust, except to note that the present problem relates to the determination of what constitutes "net income" in this trust. Settlor, as was his right, created his own rules of apportionment in some detail. In paragraph tenth of the deed, he provided as follows:

"The Donor further directs that any and all dividends and distributions payable in the stock of the corporation or association declaring or authorizing the same, . . . except as hereinafter provided, and any and

all extraordinary dividends in cash, as hereinafter defined, shall be deemed to be principal, except that in case the regular dividend on said Life Insurance stock, as hereinafter defined, should be made payable in stock, then in such event such stock dividend shall be deemed to be income."

And further, in paragraph thirteenth:

". . . the term 'extraordinary dividend' with respect to said Life Insurance stock shall be deemed to mean and include that portion of the total dividends per annum, whether payable, optionally or otherwise, in cash or stock, which is in excess of the aggregate sum of $4 per share per annum; and the term 'regular dividend' with respect to such Life Insurance stock shall be deemed to mean and include the total dividends per annum, whether payable, optionally or otherwise, in cash or stock, up to but not in excess of the aggregate sum of $4. per share per annum."

The life insurance stock is, and has always been, the only security held by the trust. From 1941 through 1949, cash dividends only of $4 or less per share were paid. In 1950, a 100 percent stock dividend with no change in par value was paid, together with a cash dividend of $2 on both old and new shares. From 1951 to 1953, cash dividends of $2.20 per share were paid, and from 1954 to 1957, cash dividends of $2.40 per share were paid. In 1958, the stock was split two-for-one, and par value was correspondingly reduced one half. Starting in 1958, annual stock dividends, along with the cash dividends, were paid, the annual values of which were always more than $2 per share.

It is the accountants' considered position that the 1958 split presented a situation not precisely covered by the deed; they contend that the reduction of the par value caused thereby requires the $4 regular dividend limit as defined in the deed logically to be reduced to $2 per share. Their theory is that even though the

split doubled the number of outstanding shares, it resulted in no increase in capitalization, and thus no change in the equity of the company held by the trust. Accountants have submitted calculations based upon this position, indicating therein that 1,989.104 shares of life insurance stock should be transferred from principal to income, since actual income distributions have heretofore been limited to the cash received by the trustees. It should be noted that there has been an additional two-for-one split in 1964, which is not included in these calculations, but which trustees propose to handle similarly, resulting in a further reduction of the dividend limit to $1 per share per year.

There has been filed a ratification, stipulation and approval of this scheme of income distribution, acquiesced in by the existing trustees, the State-Planters Bank of Commerce and Trusts, of Richmond, Va., and the other life tenants. The only objection to the proposal of the trustees comes from Aaron S. Swartz, 3rd, Esq., guardian and trustee ad litem for minor children having an interest in this estate and for unborn or unascertained beneficiaries. In pursuance of his duty to present the matter in a light most favorable to his remainder interests (Piperberg Estate, 87 D. & C. 26), Mr. Swartz argues that income distributions must be limited to $4 per year on 3,300 shares of stock, which was the number of shares originally placed in trust by settlor, because settlor, in effect, placed a $13,200 limit on annual dividends. Accountants, however, strenuously object to this interpretation. They point out the obvious awareness and willingness on the part of settlor that the investments of the trust might change; they also correctly show that the income beneficiaries would thus be entirely cut off from any share in the prosperity of the corporation, while the remainder would correspondingly receive it all. Distributions already made heretofore have exceeded this

annual rate by so much that, if this position were adopted, trustees would be required to stop all income payments for a period in excess of two years in order to recoup the overpayments. Under these circumstances, and since settlor used no language which could reasonably be held to require such an unnatural result, this interpretation cannot be adopted.

In his thorough report, the guardian and trustee ad litem also discusses another alternative, that of allowing the payment of $4 per share on all shares held by the trust. This would exhaust all dividends, both cash and stock, except in the cases of the 100 percent stock dividend and the two splits, and Mr. Swartz concludes that this could not have been intended by the donor. But it must be observed that the original $80 value of the life insurance shares has now decreased to only $66, in spite of the 10-fold increase in the number of shares held. Even a $4 annual return on shares of such value would not be so great as to make it unnatural to distribute it to income beneficiaries in toto, if that issue were before me. But income distributions cannot be made by the trustees except from dividends declared by the corporation, which in most years have been substantially less than $4 per share. Moreover, no party has argued for distribution in this fashion, and while the language of the deed conceivably might be so construed, it is not so clear that it requires such an interpretation. The overall position of accountants is fully as justifiable, since the capital structure of the Life Insurance Company of Virginia has changed so markedly since 1941, and, in addition, their view accomplishes a more equitable balancing of interests between income and principal beneficiaries.

To this, the guardian and trustee ad litem raises two further objections. First, he points out that there is nothing of record in this matter proving the corporate history to be as set forth by accountants. However,

the trustees have been closely and successfully connected with the operation of the company, and there is no reason to doubt the correctness of their presentation. Indeed, Mr. Swartz concedes this. Second, he argues that the accountants' interpretation is not substantiated by the language of the deed. This is so to some extent, but the phenomenal growth of the trust was not directly contemplated by donor, and hence it is too much to expect the deed to provide a clear, ready answer to the problem. On the corporate balance sheet, an original share has now become four, not by the conversion of earnings into shares or by additional contributions of capital, but only by arithmetical division. The treatment proposed by accountants cannot be objected to except by exalting the form of a "share" above its substance. Accordingly, accountants are authorized to transfer 1,989.104 shares of the Life Insurance Company of Virginia from principal to income, as set forth in "Summary A" and "Summary B" attached to paragraph 10 of the petition for adjudication. . . .

And now, May 20, 1965, this adjudication is confirmed nisi.